**Eldon E. BELL, Appellee,**

v.

**Chester SELLEVOLD, Alvin Block, Ardis Abbott, Orville Hein, and Charles Hesla, individually and as members of the Board of Commissioners of Day County, South Dakota; and Day County, an organized county of the State of South Dakota, Appellants.**

**In re DAY COUNTY, SOUTH DAKOTA, Petitioner.**

**Nos. 83–1168, 83–1235.**

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1983.

Decided Aug. 15, 1983.

Rehearing and Rehearing En Banc Denied Sept. 15, 1983.

---

David A. Gerdes, May, Adam, Gerdes & Thompson, Pierre, S.D., and Thomas E. Klinkel, Richardson, Groseclose, Kornmann, Wyly, Wise & Klinkel, Aberdeen, S.D., for appellee.

Edwin E. Evans, Michael J. Schaffer, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., and Leon J. Vander Linden, State's Atty., Day County, Webster, S.D., for appellants and petitioner.

Before ROSS, ARNOLD and JOHN R. GIBSON, Circuit Judges.

ARNOLD, Circuit Judge.

This case involves the efforts of Day County, South Dakota, to evict Eldon E. Bell, M.D., from space he has been using in a medical clinic in Webster, South Dakota, owned by the county. The governing body of the county, the Board of County Commissioners, brought an action against Dr. Bell in a state court for forcible entry and detainer, claiming that he was holding over wrongfully after expiration of a lease. Dr. Bell then brought this suit in the United States District Court for the District of South Dakota, claiming, among other things, that the county was depriving him of property (his right to use and occupy the clinic) and liberty (his reputation as a physician) without due process of law. The District Court granted Dr. Bell's motion for preliminary injunction and forbade the defendants to do anything to dispossess him (including prosecuting the state-court action) until the case could be tried on its merits in the federal court. Because we believe that defendants have not deprived Dr. Bell of either liberty or property, we reverse.

## I.

Dr. Bell came to Webster in 1969. By all accounts, he is an exemplary physician and surgeon, and no one on either side of this controversy questions either his integrity or his medical ability and judgment. Since coming to Webster, he has been a member of the professional staff of the Day County Hospital, operated by the county under S.D. Codified Laws Ann. §§ 34–8–1 to –23 (1977 & Supp.1982). He has also used as his office for the practice of medicine space in a clinic owned by the county. In September of 1982, the Board of County Commissioners became dissatisfied with what it felt was "turmoil" among the physicians occupying the clinic. The details of the personal differences among the parties are not immediately material for present purposes. Suffice it to say that the Board thought, for whatever reason, that Dr. Bell was chiefly responsible for the "turmoil." On September 19, 1982, the Board voted to terminate the leases of all but one of the four physicians at the clinic, including Dr. Bell. After at least two more meetings, the Board relented as to two of the three terminated tenants, but it refused to change its mind as to Dr. Bell. On November 23, the Board sued Dr. Bell in the Circuit Court for the Fifth Judicial District of South Dakota. The action was brought under the South Dakota forcible-entry-and-detainer statutes, S.D. Codified Laws Ann. §§ 21–16–1 to –12 (1979).

On December 10, 1982, before any proceedings of substance had occurred in the state court, Dr. Bell brought this suit. His complaint alleged claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the antitrust laws. Both damages and equitable relief were requested. On January 3 and 24, 1983, the District Court, moving with commendable promptness, held an evidentiary hearing on plaintiff's motion for preliminary injunction. The main question of fact contested at the hearing was what promises had been made Dr. Bell to persuade him to come to South Dakota to practice medicine. He contended, and evidence was presented to support the contention, that a representative of the county—not a member of the Board of County Commissioners, but a person orally authorized by the Board—had promised him in 1969 that he could use the clinic as his office for the practice of medicine indefinitely, as long as he continued to practice in Webster and maintained his good standing as a licensed physician. The defendants argued, among other things, that even if such an oral promise was made, it was legally unenforceable for at least two reasons: not being in writing, nor having been authorized in writing, it was invalid under the statute of frauds; and it was inconsistent with the only written lease that Dr. Bell and the county had ever signed, a one-year lease that expired by its own terms on December 31, 1972. (At one time plaintiff claimed that this lease had been automatically renewing itself from year to year, but he has now announced his

intention to abandon this contention. Brief for Appellee 18.) Thus, so far as the law of property is concerned, the positions of the parties come down to this: defendants say Dr. Bell was a tenant from month to month under an oral agreement, which they have terminated, and plaintiff says he has a right, under another oral agreement, to remain in the clinic as long as he practices medicine in Webster.

At the conclusion of the hearing the District Court ruled from the bench and granted plaintiff's motion for preliminary injunction. The court made appropriate findings on the balance of equities and held that plaintiff had shown the requisite likelihood of success on his claim that the county had deprived him, or was about to deprive him, of a "property or liberty interest," Tr. 259, without due process of law. On the same day, January 24, 1983, a written order was entered restraining the defendants "from interfering ... with plaintiff's use and possession of his present medical office in the Clinic in Webster, South Dakota." Designated Record (D.R.) 75. The order was to remain in effect until final judgment in the federal suit, and provided that until that time Dr. Bell would pay his rent into a special bank account. The effect of the order, of course, was to prohibit defendants from prosecuting their state-court action for possession of the disputed premises, and no further action in that case has taken place. The District Court also denied defendants' motion to dismiss the complaint, which it had earlier properly agreed, Tr. 48, to treat as a motion for summary judgment. Defendants appeal, claiming that the motion for preliminary injunction should have been denied, and that their motion for summary judgment should have been granted.

In the course of its oral opinion, the District Court, following up on a suggestion it had made to counsel earlier, also ruled that it had and would exercise "pendent jurisdiction in the State claim." Tr. 267. By this the court seems to have meant that it would try, in the federal forum, not only the plaintiff's suit under 42 U.S.C. § 1983 and the other federal statutes pleaded, but also the

defendants' forcible-entry-and-detainer proceeding, originally filed in the state court. Counsel for plaintiff asked if the court's order would "provide that the Court is accepting pendent jurisdiction and ordering the State Court files to be delivered to the Federal Court," Tr. 266, and the District Court replied:

> I am reluctant to order the State Court to do anything. I rely on the State Court to do what is right, and I have now ordered that this entire action be tried in this Court, jury demanded, I granted that.

*Ibid.* No written order signed by the District Court was ever entered embodying this apparent decision to exercise "pendent jurisdiction" over the state-court action. Defendants, in addition to their appeal already described, have also petitioned us for a writ of prohibition to command the District Court not to exercise any such "pendent jurisdiction."

## II.

■ The preliminary injunction rests entirely on the premise that defendants are depriving plaintiff of either liberty or property without due process of law, or, at any rate, that plaintiff is likely at trial to succeed on his claim that they are doing so. Normally our review of orders granting or denying a preliminary injunction is limited to determining whether the District Court has abused its discretion. That is not true, however, where the question presented is purely one of law. "[O]n questions of law we owe no deference in any formal sense to the District Court." *Chu Drua Cha v. Noot,* 696 F.2d 594, 599–600 (8th Cir.1982) (vacating denial of preliminary injunction). If the District Court's order granting preliminary relief rests on a legal basis that we believe to be mistaken, then we may and should reverse, whatever the relative equities of the parties may be. For in that event whatever injury the plaintiff may suffer, irreparable or not, will simply be the result of the application of a correct rule of

law. Here, we are firmly convinced as a matter of law that defendants have deprived Dr. Bell of neither liberty or property, as those terms are used in the Fourteenth Amendment. This being so, the whole basis of a Section 1983 action on a procedural-due-process theory fails.

■ The plaintiff argues that he should have been given notice and some kind of hearing before the Board met and voted to terminate his occupancy of the clinic. The Board's vote, however, deprived him of no property. It merely expressed the Board's intention to go to court to try to get Dr. Bell out of the clinic. Plaintiff is still in the clinic, and has been continuously ever since the Board's meeting. His hospital staff privileges have not been disturbed, nor has anyone indicated that any effort will be made to disturb them. He argues that the very decision by the Board to sue him for possession should have been preceded by notice and hearing, but we disagree for at least two reasons. First, a rule requiring notice and hearing before any public body decides to go to court to assert its rights in property would paralyze local government in an important part of its responsibilities. And second, whether plaintiff has a property interest in the first place is the question to be decided by the state court in the Board's suit. He has no property right not to be sued for possession. Like any other party to a lease, he is liable to suit by another party seeking a determination of its rights under the lease. At common law, a landlord could enter and expel by force a tenant holding over wrongfully, see *Lindsey v. Normet,* 405 U.S. 56, 71, 92 S.Ct. 862, 873, 31 L.Ed.2d 36 (1972), and a public body taking such action would perhaps be bound to give the tenant notice and hearing beforehand. But that is not this case. Here, the Board has simply sought the aid of the courts in establishing a property right that, if its view of the law is correct, it has always had.

If Dr. Bell were, as a result of the state-court proceedings, about to be evicted without due process, he might have a case. But he does not claim that the South Dakota forcible-entry-and-detainer procedure itself violates the Due Process Clause. Nor could such a claim succeed, in light of *Lindsey v. Normet, supra,* in which the Supreme Court upheld, against due-process and equal-protection challenges, most features[1] of an Oregon statute that was procedurally less generous to tenants than the South Dakota scheme. In South Dakota, the procedure in actions for forcible entry and detainer is in most respects the same as in other actions. S.D. Codified Laws Ann. § 21–16–6 (1979). A jury may be demanded. There are provisions for a quick trial, but a tenant may secure a continuance (as in Oregon) by posting a bond for the payment of rent and costs of suit, *id.* § 21–16–7. In Oregon defenses such as unconstitutionality of the proceeding, failure of consideration, and unclean hands could not be raised, see 405 U.S. at 66–67 n. 12, 92 S.Ct. at 870–871 n. 12, but in South Dakota equitable defenses such as estoppel and waiver may be asserted. *Jordan v. Duprel,* 303 N.W.2d 796, 799 (S.D. 1981); *Heiser v. Rodway,* 247 N.W.2d 65, 68 (S.D.1976) ("evidence pertinent to the issue of possession is properly admissible in an unlawful detainer action, even though the evidence is equitable in nature.") (footnote omitted). The apparently contrary holding in *Aegerter v. Hayes,* 55 S.D. 337, 342, 226 N.W. 345, 347 (1929), was disapproved in *Heiser.*

The major defense raised by Dr. Bell in his answer in the state court, Brief of Appellants App. 1–4, is that he is entitled to possession of the clinic under the alleged oral agreement made in 1969. This defense immediately concerns the right of possession, and we have no doubt that it is properly raised in the state court, along with any related theories of estoppel, as, for example, that even if the oral agreement is void for some reason, the plaintiff's long performance under it should estop the county to

1. One feature of the Oregon statute, requiring the posting of a double bond as a prerequisite to a tenant's appeal, was held violative of equal protection, 405 U.S. at 74–79, 92 S.Ct. at 874–877, but the South Dakota statutes contain no such provision.

attack it. Plaintiff has not pleaded in the state court any federal defenses, but we have no reason to doubt that they would be entertained, assuming they related to his right of possession. Indeed, the state courts would probably be constitutionally compelled to hear and decide any federal defenses. See *Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947), reaffirmed in *Federal Energy Regulatory Commission v. Mississippi,* 456 U.S. 742, 760–63, 102 S.Ct. 2126, 2137–40, 72 L.Ed.2d 532 (1982). In short, defendants have not deprived plaintiff of his property, and if he loses possession of the clinic in the future, it will only be in accordance with the judgment of a state court, in a proceeding fully consistent with due process, that he has no right to remain.

So much for property. Plaintiff also claims that he was deprived of liberty because the Board's vote to go to court to evict him damaged his reputation in the community and reduced his clientele. There is a line of public-employee cases holding that a public body may not discharge anyone—even an employee without a contractual or property right in his job— and make public reasons for the discharge involving stigma or obloquy, without giving the employee a right to clear his or her name at some kind of a due-process hearing. We assume *arguendo* that the same reasoning could be made to apply to a termination of a lease. The liberty theory still must fail, because defendants never made public any stigmatizing reasons for their action. They simply voted to sue Dr. Bell for possession. No reasons at all were given in public. The accusation that Dr. Bell was responsible for "turmoil" came in a letter written to him at his own lawyer's request. The letter is now public because plaintiff introduced it as an exhibit (PX 2) at the hearing on his motion for a preliminary injunction. *Bishop v. Wood,* 426 U.S. 341, 347–50, 96 S.Ct. 2074, 2078–80, 48 L.Ed.2d 684 (1976), holds that there is no deprivation of constitutionally protected liberty in such a situation. *Accord, Kyles v.* *Eastern Nebraska Human Services Agency,* 632 F.2d 57, 61–62 (8th Cir.1980).

It would still be possible to affirm the preliminary injunction if plaintiff had a viable equal-protection theory, assuming the other requirements for interim relief were met, and the parties have briefed this issue, though equal protection does not seem to have been part of the District Court's rationale. But only a moment's reflection is needed to convince us that this is not an equal-protection case. There is no claim that plaintiff is the victim of racial or other class-based animus, nor that he is being evicted because of some irrational classification adopted by the Board. He vigorously insists that the Board was mistaken, perhaps even motivated by personal dislike; that there was no "turmoil" at the clinic, or that in any event he is no more responsible for it than anyone else. He may be right; but that is not at all the same thing as a denial of the equal protection of the laws. The Supreme Court has warned that "[t]he Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised ... decisions," *Bishop v. Wood, supra,* 426 U.S. at 350, 96 S.Ct. at 2080, and the same is true of the Equal Protection Clause.

The suggestion that "substantive due process" has been violated may be equally briefly disposed of. The argument is, if we understand it, that plaintiff has a constitutional right, no matter what procedures are employed, to occupy the county-owned clinic. We reject this contention. " 'A doctor has no constitutional right to practice medicine in a public hospital,' " *Klinge v. Lutheran Charities Association,* 523 F.2d 56, 61 (8th Cir.1975) (quoting *Woodbury v. McKinnon,* 447 F.2d 839, 842 (5th Cir.1971)), and it must follow *a fortiori* that he has no such right, independent of state property law, to use and occupy public property. It remains true, of course, that a citizen may not be deprived of employment, occupancy of land, or any other significant interest for a constitutionally impermissible

reason, like race or religion, but that is not plaintiff's claim here.[2]

For these reasons, we hold that plaintiff has not made out a viable claim under 42 U.S.C. § 1983. He has no likelihood of success on the merits of the § 1983 claims so far pleaded. The preliminary injunction must therefore be reversed.

## II.

Defendants also appeal from the District Court's denial of their motion for summary judgment. They argue that they are immune from suit because they acted in good faith as that term has recently been redefined by the Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982):

> We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

We have recently held, in *Evans v. Dillahunty,* 711 F.2d 828 (8th Cir.1983), "that motions for summary judgment and motions to dismiss that are premised on absolute or qualified immunity are immediately appealable [if] ... [t]he essential facts are not in dispute ... and ... the determination of whether the government official is entitled to immunity is solely a question of law." At 830 (footnote omitted).

We need not decide whether the District Court's order in this case meets these criteria for appealability, because the immunity issue is, at least for the present, not a live one. In Part I of this opinion we have considered each of the bases for § 1983 relief thus far pleaded by the plaintiff and held that they are untenable. On the present state of the record, therefore, defendants would be entitled to dismissal of the § 1983 claims pleaded in the complaint, quite apart from any defense of good-faith or qualified immunity. If, on remand, plaintiff does move for leave to amend his complaint to assert a § 1983 claim based on a First Amendment theory, if this motion for leave to amend is granted, if the new theory thus pleaded is held to state a claim for relief, if defendants again move to dismiss on the basis of good-faith immunity, and if this motion is denied, then a new appeal could be taken of which we might have jurisdiction. For the present, however, discussion of the immunity issue, either as to jurisdiction or as to its merits, would be pointless. To the extent that defendants now seek to raise this question on appeal, therefore, their appeal will be dismissed as moot. (There remain in the complaint, of course, theories based on 42 U.S.C. § 1985[3] and the antitrust laws, but we do not understand defendants to be asserting the immunity defense to these theories.)

## III.

▮ We now turn to No. 83–1235, in which Day County as petitioner seeks a writ of prohibition commanding the District Court not to exercise "pendent jurisdiction" over the forcible-entry-and-detainer action pending in the state court. Extraordinary writs are granted only sparingly, and never simply because of disagreement with a district court on a question of law. We are persuaded, however, that this case falls squarely within the narrowest concept of the writ of prohibition: that is, it represents an apparent decision by a district

---

**2.** Plaintiff intends to ask leave to amend his complaint to assert a First Amendment theory—that he is being ejected because he is "too demanding." Brief of Appellee 18–19. We express no view on the merits of such a theory, and our action today is without prejudice to plaintiff's right to advance it.

**3.** In view of our discussion of the Equal Protection Clause in Part I of this opinion, it is hard to see how a § 1985 claim could succeed. The only portion of that section that appears even arguably applicable in this case is § 1985(3), which requires that some racial or other class-based animus be alleged, a requirement that, as we have seen, is not met here. It is possible, however, that the § 1985 claim, along with the antitrust claim, may be further developed in discovery or by amendment to the pleadings, and our disposition of this appeal is without prejudice to such further development.

court to exercise jurisdiction that it clearly does not have, in a situation where the wrongful exercise of jurisdiction cannot be effectively corrected by appeal after final judgment. See *In re South Dakota,* 692 F.2d 1158, 1161 (8th Cir.1982):

> If the lower court is clearly without jurisdiction the writ will ordinarily be granted to one who at the outset objected to the jurisdiction, has preserved his rights by appropriate procedure and has no other remedy.

(Quoting *Ex parte Chicago, Rock Island & Pacific Railway,* 255 U.S. 273, 275, 41 S.Ct. 288, 289, 65 L.Ed. 631 (1921).)

In theory, we suppose it is possible to argue that any error committed could be corrected on defendants' appeal from a final judgment against them, assuming that such a judgment occurs. We disagree with this position for several reasons. First, defendants will not necessarily lose on the merits. If plaintiffs lose, they could appeal, but would presumably not contest the District Court's exercise of "pendent jurisdiction," since they themselves urged that jurisdiction upon the District Court. In that event, the jurisdiction of the state courts over a case properly brought before them would have been usurped, and no remedy would be available. Even if defendants do lose on the merits, we think their right to try their state-law action in the state courts is so fundamental, and so clearly outside the jurisdiction of the federal courts, that they should not be compelled to go through a federal trial. An appeal from an adverse judgment, even a successful appeal, would not undo the fact that defendants had been unlawfully compelled to try their case in a federal forum.

Counsel for Dr. Bell, in his capacity of respondent in the prohibition case, argues that the writ should never be granted unless the entitlement to it is clear, and that, since no case has held that pendent jurisdiction may not be exercised in a situation like that presented here, it cannot be said that there was a clear excess of jurisdiction on the part of the District Court. We disagree. No case has ever held that jurisdiction may not be exercised in this situation simply because no court has ever asserted such jurisdiction, probably because, for reasons we will shortly explain, such an assertion is clearly unauthorized.

The Supreme Court has most recently explained the doctrine of pendent jurisdiction in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 1137, 16 L.Ed.2d 218 (1966):

> [I]f, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.

(Footnote omitted.) The whole premise of this doctrine is that two claims have been tendered for decision by some party, either a plaintiff, a counterclaimant, a third-party claimant, or some other party in a similar position. If, for example, the plaintiff here, in addition to his federal claims, had pleaded in his federal-court complaint that his eviction would violate state law, either common or statutory, the federal court would in all likelihood have pendent jurisdiction of that state-law claim, despite the absence of complete diversity among the parties. The situation here is quite different. Plaintiff is asserting a federal claim in a federal court, but the other claim, the one over which the District Court seems to intend to exercise "pendent jurisdiction," is not in the federal court at all, nor is it a claim belonging to the plaintiff. It is, instead, a claim being asserted in a state court by the federal-court defendants. Such a claim, one originally brought in a state court, can get into a federal trial court only by removal, and removal requires the filing of a petition by the state-court defendant, as well as the meeting of statutory grounds, neither of which conditions has or can occur here. What the District Court seems to have done here amounts to a kind of involuntary removal, and there is simply no authority in the statutes for such a procedure. The district courts, like this Court, are courts of limited jurisdiction, and they may not exer-

cise power not conferred upon them by Congress. We must be especially alert to maintain these limits when to transgress them would encroach upon the well-recognized and traditional power and duty of the state courts to decide state-law claims properly brought before them.

It is true, as the District Court remarked in its oral opinion, that the federal case and the state case both arise out of a common nucleus of operative fact. That alone, however, is an insufficient basis to justify the assertion of federal jurisdiction over a separate lawsuit brought in a state court. The terms "federal claim" and "state claim" as they are used in the pendent-jurisdiction context refer to the law that creates or governs the respective claims as a substantive matter. They do not refer to the forum in which the claims are pending. In other words, in order for the question of pendent jurisdiction even to arise, there must be before the federal court a claim arising under or governed by federal law and a claim arising under or governed by state law, over which the federal court has no independent basis of jurisdiction. *Wrist-Rocket Manufacturing Co. v. Saunders Archery Co.*, 578 F.2d 727 (8th Cir.1978), cited by the District Court in its opinion, is such a case. There, the plaintiff asserted a federal claim under the Lanham Act and a pendent state claim for breach of fiduciary duty, and we held that the District Court had jurisdiction to hear the state-law claim as well as the Lanham Act claim.

The District Court was understandably. concerned about the possible duplication of effort and expense that would occur if the two lawsuits, Dr. Bell's federal case and the County's state case, were allowed to proceed at the same time. We share this concern, but there are a number of answers to it. First, the District Court's grant of preliminary injunctive relief, which we have reversed for other reasons, necessarily meant that the state-court case would not go forward, because defendants were forbidden to prosecute it. Second, the simultaneous prosecution of *in personam* actions in federal and state courts is simply one of the costs that we pay for a federal system.

The leading case is *Kline v. Burke Construction Co.*, 260 U.S. 226, 230, 43 S.Ct. 79, 81, 67 L.Ed. 226 (1922), in which the Court held that when two *in personam* actions, although based on the same claim, are pending, one in a federal court and one in a state court,

> [e]ach court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of *res adjudicata* by the court in which the action is still pending in the orderly exercise of its jurisdiction, as it would determine any other question of fact or law arising in the progress of the case. The rule, therefore, has become generally established that where the action first brought is *in personam* and seeks only a personal judgment, another action for the same cause in another jurisdiction is not precluded.

One of the courts may choose, in the exercise of its own discretion, to stay the proceedings before it, or one of the courts may choose, if the law and the facts justify such action, to enjoin the parties from prosecuting their suit before the other forum. But if neither of these events occurs, the cases may proceed in parallel, and whichever one comes first to judgment becomes *res judicata* as to the other. For this reason, to take the present case as an example, the District Court's concern for duplication may have been overstated, because, even if the state proceeding had been permitted to go forward (as it now will be because of our reversal of the preliminary injunction), the question of entitlement to possession of the clinic would not have to be litigated twice. Whichever court decides it first would, assuming all of the other requirements of *res judicata* are met, conclude the other.

We hold, therefore, that the petition for writ of prohibition is well taken. We nevertheless believe it unnecessary to direct the clerk actually to issue the writ. For one thing, we are not certain that the Dis-

trict Court really intended to draw unto itself the state-court action as such. In the course of its oral opinion, the Court correctly noted that the taking of pendent jurisdiction was not necessary, because the issue of the right to possession of the clinic would, for reasons we have just now explained, be determined at trial, whether or not the state-court case remained pending in the state forum. In fact, it seems likely that the District Court, for just this reason, may later have thought better of its orally announced intention to assume pendent jurisdiction. The parties apparently submitted to the Court an order embodying this decision in writing, but no such order was ever signed and filed with the clerk. We are not certain, in other words, that the District Court intended to follow through on its oral remarks, and, in any case, we are confident that formal issuance of the writ will not be necessary.

### IV.

In No. 83–1168, the order granting plaintiff's motion for preliminary injunction is reversed. The defendants' appeal from the denial of their motion for summary judgment is dismissed as moot, and the cause is remanded for further proceedings in accordance with this opinion, looking towards resolution of plaintiff's claims based on 42 U.S.C. § 1985 and the federal antitrust statutes, as well as any amended § 1983 theory he may assert based on the First Amendment. In No. 83–1235, the petition for writ of prohibition is granted, but the clerk will withhold issuance of the writ, subject to the right of petitioner to apply for relief later in the event (which we do not now foresee) of its being necessary.

It is so ordered.