909 F.2d 736
 Edward BELADE, William Cochran, Monica Denman, Harriet
Dokla, Charles Griebell, Joy Laiacone, Eleanor McGovern,
Geraldine Privee, Frank Yates and David Zeller, on behalf of
themselves and all others similarly situated, Plaintiffs-Appellants,
v.
ITT CORPORATION, Defendant-Appellee.
 No. 704, Docket 89-7924.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 17, 1990.
Decided July 25, 1990.
 
 Joseph D. Garrison (Garrison, Kahn, Silbert & Arterton, New Haven, Conn., of counsel), for plaintiffs-appellants.
 William L. Kandel (Russell G. Tisman, McDermott, Will & Emery, New York City, of counsel), for defendant-appellee.
 Before FEINBERG, PRATT and MAHONEY, Circuit Judges.
 PER CURIAM:
 
 
 1
 In 1986, defendant-appellant ITT Corporation ("ITT") and Compagnie Generale d'Electricite ("CGE") entered into negotiations for the purchase by CGE of ITT's worldwide telecommunications businesses and related research facilities, including the Advanced Technology Center ("ATC") in Shelton, Connecticut where Edward Belade and the other plaintiffs-appellants (the "Belade claimants") then worked.[1] These negotiations culminated in the sale by ITT to CGE of the stock of those telecommunications businesses and facilities. The businesses were transferred as going concerns, and over 90,000 employees, including the ATC employees, were transferred with the divested units. The terms of sale negotiated by ITT included continuing employment in the same positions for transferred ITT employees, with equivalent terms and conditions of employment, including normal retirement benefits. CGE then contributed these units, together with CGE's worldwide telecommunications businesses, to Alcatel, N.V. ("Alcatel"), a newly formed corporation in which ITT has a substantial minority stock position. On or about February 20, 1987, Alcatel announced that the ATC would close by July 31, 1987. Termination of ATC employees commenced on March 2, 1987.
 
 
 2
 Largely because of the imminent divestiture pursuant to the CGE venture, ITT sought to restructure its corporate headquarters into a significantly smaller organization with correspondingly reduced staffing levels. Toward this end, ITT's management designed an Enhanced Retirement Program (the "Program") that offered retirement incentives, in the words of the directors' resolution establishing the Program, to certain "currently active, full-time, Corporate employees of designated departments and units of ITT World Headquarters located at 320 Park Avenue, New York, N.Y., and elsewhere." Immediately following approval of the Program by ITT's board of directors on October 7, 1986, ITT management designated certain headquarters departments to be eligible for the Program, and then invited participation by qualified employees of those designated departments via personalized letters dated October 8, 1986. Letters were sent only to employees in management-designated departments. The pension administration committee that administers ITT's retirement plan was not involved in the decision to offer the Program, its design, or the selection of employees to receive offers thereunder.
 
 
 3
 ATC was not designated for inclusion in the Program, since the Program was not made available to employees who, after the CGE sale, would be employed by Alcatel. Accordingly, none of the Belade claimants received offer letters.
 
 
 4
 In an action filed in the United States District Court for the District of Connecticut, the Belade claimants alleged, inter alia, that ITT violated its fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Secs. 1001-1461 (1988), by denying ATC employees enhanced retirement benefits under the Program. Following motions for partial summary judgment by all parties, the district court granted partial summary judgment in favor of ITT, ruling that in designing the Program and designating employees eligible to participate in it, ITT was not bound by ERISA. Judgment was subsequently entered dismissing the action with prejudice, and a timely appeal and cross-appeal were taken from that judgment.
 
 
 5
 We write only to address the question whether an employer's decision to exclude certain employees from the design of an early retirement program implicates fiduciary duties under ERISA.[2] We answer this question in the negative, in accord with Trenton v. Scott Paper Co., 832 F.2d 806 (3rd Cir.1987), cert. denied, 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988), because "[t]he design of the [Program] was purely a corporate management decision," id. at 809, and ITT "had no fiduciary duty" under ERISA concerning its adoption, id.
 
 
 6
 "ERISA permits employers to wear 'two hats,' and ... they assume fiduciary status 'only when and to the extent' that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA." Amato v. Western Union Int'l, 773 F.2d 1402, 1416-17 (2d Cir.1985) (quoting Amato v. Western Union Int'l, 596 F.Supp. 963, 968 (S.D.N.Y.1984)), cert. dismissed, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986). Here, as the district court correctly concluded, "the defendant's decision to design a plan for employees in select departments did not give rise to any fiduciary duty under ERISA because the company did not by virtue of the Program's formation exercise authority or control over the 'management' or 'administration' of either the [ITT Salaried Retirement] Plan or the Program."
 
 
 7
 Contrary to appellants' contention, the Supreme Court's decision in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), does not bring design decisions within ERISA. Firestone "is limited to the appropriate standard of review in Sec. 1132(a)(1)(B) actions challenging denials of benefits based on [ERISA-governed] plan interpretations," id., 109 S.Ct. at 953, and does not purport to expand the scope of ERISA to include design decisions defining the parameters of a program. See Brown v. Ampco-Pittsburgh Corp., 876 F.2d 546, 551-52 (6th Cir.1989) (Nelson, J., concurring); see also Dzinglski v. Weirton Steel Corp., 875 F.2d 1075, 1078-79 (4th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 281, 107 L.Ed.2d 261 (1989); Hlinka v. Bethlehem Steel Corp., 863 F.2d 279, 285-86 (3d Cir.1988).
 
 
 8
 Although ITT cross-appealed from the judgment of the district court, and sought sanctions below, ITT has presented no argument for sanctions on appeal. In any event, none would be appropriate on this record.
 
 
 9
 The judgment of the district court is affirmed.
 
 
 
 [1]
 The Belade claimants seek to bring this action on behalf of a class of salaried personnel, approximately forty in number, who were employed at ATC on October 8, 1986 and were denied the opportunity to participate in an Enhanced Retirement Program hereinafter described
 
 
 [2]
 For the reasons stated in the opinion of the district court granting partial summary judgment to ITT, we agree that ITT clearly did not include ATC as a designated unit under the Program