Frank J. AMATO, et al., Plaintiffs,

v.

WESTERN UNION INTERNATIONAL,
INC., et al., Defendants.

No. 83 Civ. 2586 (JES).

United States District Court,
S.D. New York.

Oct. 31, 1984.

See also, 102 F.R.D. 268.

Eisner & Levy, P.C., Attorneys for Plaintiffs, New York City, for plaintiffs; Richard A. Levy, Fanette Pollack, Karen Schwartz, New York City, of counsel.

Kramer, Levin, Nessen, Kamin & Frankel, Attorneys for Defendants, New York City, for defendants; Greg A. Danilow, Michael J. Nassau, Stuart J. Baskin, New York City, of counsel.

## OPINION & ORDER

SPRIZZO, District Judge:

Defendants, Western Union International, Inc. ("Western Union"), M.C.I. Communications Corp. ("MCI"), and Microwave Maintenance Corp. ("Microwave"), move pursuant to Fed.R.Civ.P. Rules 12(b)(1) and 12(b)(6) to dismiss twelve of the fifteen causes of action alleged in plaintiffs' complaint. Plaintiffs are long-term employees of Western Union who are not covered by a collective bargaining agreement and are participants in the Western Union International, Inc. Pension Plan ("the Plan").[1] Their complaint alleges causes of action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001–1368 (1982), and under federal and state common law.

## FACTS

The complaint alleges the following facts. In July 1982, MCI, through its subsidiary Microwave, purchased from Xerox Corporation all of the capital stock of WUI, Inc., a holding company whose operating subsidiaries included Western Union. The purchase was accomplished pursuant to a "Purchase and Sale Agreement" dated January 5, 1982. Thereafter, in or about November 1982, MCI caused Western Union's board of directors to pass an amendment to the Plan (the "November 16, 1982 Amendment") that had the effect of preventing plaintiffs, and other non-bargaining unit employees, from continuing to accumulate *unreduced* early retirement benefits.

The Plan provides for four different types of pensions. With respect to each, the amount of the pension benefit payable per year is computed by multiplying one and two thirds percent times the average of the participant's three highest salary years, times his years of service. A "Class A Pension" provides for a full pension at age 55 to a participating employee who has completed 20 or more years of credited service. A "Class 75 Pension" provides for a full pension to a participating employee who has 20 or more years of credited service, and whose years of age plus years of service total 75 at the time of retirement. The third type, "Age 65 Pension," provides a full pension at age 65 for a participating employee who is ineligible for a Class A or Class 75 Pension. The fourth type, "Deferred Vested Pension," is provided for a terminated employee who has completed 10 years of credited service but is ineligible for a Class A, Class 75, or Age 65 Pension. Such former employees can elect to receive a full pension at age 65, or an actuarially reduced pension between the ages of 55 and 65.

The November 16, 1982 Amendment provided that, as of January 1, 1983, all Western Union non-bargaining unit employees would cease to accrue benefits under the Plan or to become eligible for Class A or Class 75 Pensions. Rather, those employees would begin to accrue benefits under MCI's plan in the same manner as other MCI personnel.[2]

---

1. The Plan is an employee pension benefit plan of the defined benefit type within the meaning of sections 3(2) and 3(35) of ERISA, 29 U.S.C. §§ 1002(2), 1002(35), and is sponsored by Western Union, which also serves as Plan Administrator. Western Union, WUI, Inc., and WUI Processing Corporation are or have been participating employers, which have made contributions to the Plan over a period of years for the purpose of providing retirement benefits to participants and beneficiaries of the Plan.

2. The amendment, in part, reads as follows:

In short, the effect of the November 16, 1982 Amendment was to deprive plaintiffs of the opportunity, previously afforded to them under the Plan, to retire prior to age 65 with full benefits. Although plaintiffs may still elect to retire before age 65, their early retirement benefit will now be the actuarial equivalent of the benefit payable at age 65, instead of a full (i.e., actuarially *un* reduced) benefit.

## I

## ERISA CLAIMS

### A. *Reduction in Accrued Benefits*

█ In their fifth cause of action, plaintiffs argue that their Class A and Class 75 pension benefits were "accrued benefits" within the meaning of ERISA and that the November 16, 1982 Amendment impermissibly decreased those benefits.[3] The defendants do not dispute that accrued benefits may not be reduced, but contend that the November 16, 1982 Amendment did not have that effect.

ERISA defines an "accrued benefit" as either "an annual benefit commencing at normal retirement age [which is 65 under Western Union's Plan]," 29 · U.S.C. § 1002(23)(A); *see* I.R.C. § 411(a)(7)(A)(i), or "the actuarial equivalent of such benefit or amount . . . ," 29 U.S.C. § 1054(c)(3); *see* I.R.C. § 411(c)(3). It is clear, therefore, that ERISA does not foreclose a plan amendment which eliminates a right to the payment of a full pension prior to the normal retirement age. It requires only that the early retirement benefit be the actuarial equivalent of the sum payable at the normal retirement age and that the actuarial method for determining this equivalence

may not be changed. Indeed, the legislative history specifically states that "the accrued benefit to which the vesting rules apply is not to include such items as the value of the right to receive benefits commencing at an age before normal retirement age. . . ." H.R.Rep. No. 93–807, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad.News 4639, 4670, 4726.

The relevant case authorities support this conclusion that unreduced early retirement benefits do not constitute "accrued benefits" within the meaning of ERISA. *See Bencivenga v. Western Pennsylvania Teamsters and Employers Pension Fund*, No. 83 Civ. 1868 slip op. at 11 (W.D.Pa. May 14, 1984); *Sutton v. Weirton Steel Division of National Steel Corp.*, 567 F.Supp. 1184, 1196 (N.D.W.Va.), *aff'd*, 724 F.2d 406 (4th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984); *Petrella v. NL Industries, Inc.*, 529 F.Supp. 1357, 1364–66 (D.N.J.1982); *see also* Treas.Reg. § 1.411(c)–1(e)(1); Treas. Reg. § 1.411(a)–7(a)(1).

The Court is not persuaded by plaintiffs' argument that Treasury Regulation section 1.411(d)–3(b) and Revenue Ruling 81–12, which discusses that regulation, support their claim that the November 16, 1982 Amendment violates ERISA. Section 1.411(d)–3(b) provides:

*Prohibition against accrued benefit decrease.* Under section 411(d)(6) a plan is not a qualified plan . . . if a plan amendment decreases the accrued benefit of any plan participant . . . . For purposes of determining whether or not any participant's accrued benefit is decreased, all the provisions of a plan affecting directly or indirectly the computation of accrued

---

A.1 The provisions of this Supplement A shall apply to all Employees whose terms of employment are not determined by collective bargaining ("WUI Employees").

. . . . .

A.3 No WUI Employee shall accrue any further benefits under this Plan after December 31, 1982 . . . .

. . . . .

A.5 No WUI Employee who has not qualified for a Class A Pension or a Class 75 Pension as

of December 31 shall thereafter be eligible for such a pension.

**3.** Section 204(g) of ERISA, 29 U.S.C. § 1054(g), provides that "[t]he accrued benefit of a participant may not be decreased by an amendment of the plan . . . ." In addition, section 411(d)(6) of the Internal Revenue Code ("I.R.C."), 26 U.S.C. § 411(d)(6), provides that, "A plan shall be treated as not satisfying the requirements of this section if the accrued benefit of a participant is decreased by an amendment of the plan . . . ."

benefits which are amended with the same adoption and effective dates shall be treated as one plan amendment. *Plan provisions indirectly affecting accrued benefits include, for example, provisions relating to ... actuarial factors for determining optional or early retirement benefits.* (emphasis added) Revenue Ruling 81–12 also gives advice as to: (1) what constitutes a change in actuarial factors indirectly affecting accrued benefits; and (2) how, in the case of a plan amendment that changes actuarial factors so as to indirectly affect an accrued benefit, the requirements of I.R.C. section 411(d)(6) can be satisfied.

Plaintiffs argue that the November 16, 1982 Amendment reduced the actuarial factor applied to compute their early retirement benefits. This argument is predicated solely upon the fact that their early retirement benefits are now less than the sum payable at normal retirement age. However, the proscribed change in the actuarial formula contemplated by the regulation and revenue ruling is that which is used to determine the actuarial equivalent of an *accrued benefit within the meaning of ERISA*, which is a benefit payable at *normal retirement age.* The regulation and revenue ruling cited simply mean that, since an "accrued benefit" under the stat-

ute, regulations, and legislative history is defined as a benefit commencing at a normal retirement age *or the actuarial equivalent thereof,* an employer may not amend a plan to change the actuarial factors applied *in determining that actuarial equivalent.*

In other words, if the normal retirement age under a plan is 65, but the plan provides for a reduced benefit commencing at age 55, an employer may not change the actuarial factors used to determine the amount of the reduced, age 55 benefit if such a change in the formula decreases the amount of that benefit. It therefore begs the question to focus merely on the dollar amount payable at early retirement and conclude, as plaintiffs do, that because that amount is reduced there has been a change in the factors used in computing the actuarial equivalent of an accrued benefit.[4]

Since the November 16, 1982 Amendment did not reduce plaintiffs' accrued benefits, their fifth cause of action is dismissed.[5]

### B. *Fiduciary Standards*

#### 1. *General Standards*

Plaintiffs' first cause of action alleges that Western Union is a fiduciary to the

---

**4.** In support of their argument, plaintiffs also cite a letter dated April 15, 1983 by the Director of the Internal Revenue Service's Actuarial Division and a report by the chairman of the House Ways and Means Committee. The letter, which was in response to an inquiry from plaintiffs' attorney, indicated that, in the view of the author, a plan amendment such as the November 16, 1982 Amendment would be impermissible under I.R.C. section 411(d)(6) because it would reduce an actuarial factor of "one" to a factor less than "one." Since that opinion is inconsistent with the legislative history and case authority, this Court does not find it persuasive.

The House committee report related to a bill passed by the House of Representatives entitled the Retirement Equity Act of 1984 (H.R. 4280). Section 301 of that bill would amend section 204(g) of ERISA to specifically prohibit plan amendments that eliminate or reduce early retirement benefits with respect to benefits accrued prior to the amendment. *See* Report at 25–27, 42. In explaining that provision, the committee chairman stated that the amendment

merely codified existing law, citing Revenue Ruling 81–12—the Ruling upon which plaintiffs rely. *Id.* at 25–26. However, if that statement reflects the view that existing law prohibits early retirement benefits for those not already entitled to receive such benefits, the Court does not agree that H.R. 4280 merely codifies existing law, and concludes that it goes well beyond it.

**5.** The plaintiffs have apparently abandoned their fourth cause of action, which alleges that defendants deprived them of vested benefits in violation of section 203 of ERISA, 29 U.S.C. § 1053. In any event, the Court notes that early retirement benefits are not protected by the nonforfeiture provisions of section 203 prior to the participant's attainment of normal retirement age (which, in this case, is age 65). *See Riley v. MEBA Pension Trust,* 452 F.Supp. 117, 120 (S.D.N.Y.), *aff'd,* 586 F.2d 968 (2d Cir.1978); *Capocci v. General Motors Corp.,* 444 F.Supp. 1306, 1307–08 (D.Hawaii 1978). It is not disputed that plaintiffs have not yet reached that age. Plaintiffs' fourth cause of action is accordingly dismissed.

Plan, and that by amending the Plan to eliminate plaintiffs' early retirement benefits it violated the general standards of section 404 of ERISA, which require a fiduciary to discharge its duties solely in the interests of the Plan's participants and beneficiaries. 29 U.S.C. § 1104(a)(1). This argument, however, presupposes that an employer that is also a plan administrator functions in its capacity as plan fiduciary when it amends a plan to reduce unaccrued benefits, a proposition that this Court declines to accept.

■ Section 3(21)(A) of ERISA provides that:

[A] person is a fiduciary with respect to a plan *to the extent* (i) he exercises any discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (emphasis added). Thus, an employer that also acts as plan administrator "wears two hats." The employer assumes fiduciary status only when and to the extent that it functions in its capacity as plan administrator, and not when it is conducting business not otherwise regulated by ERISA.

As the district court stated in *Sutton, supra,* 567 F.Supp. at 1201,

When acting on behalf of the pension fund, there is no doubt that [an employer] must act solely to benefit participants and beneficiaries. However ... when a corporate employer negotiates the terms of sale of a division, whose employees are participants in a pension plan, the negotiations that affect the terms and conditions of future pension benefits (at least those that are not protected by

ERISA's vesting and nonforfeitability provisions), do not implicate fiduciary duties as to the pension fund .... *[T]he mere fact that a company has named itself as pension plan administrator or trustee does not restrict it from pursuing reasonable business behavior in negotiations concerning pension benefits not otherwise affected by the requirements of ERISA.* (emphasis added)

■ Since Western Union did not function in its capacity as plan administrator in enacting the November 16, 1982 Amendment, and since the Court has already held that plaintiffs' right to early retirement benefits is not protected by ERISA, Western Union's fiduciary obligations under section 404(a) of ERISA were not violated. Plaintiffs' first cause of action is therefore dismissed.[6]

2. *Prohibited Transactions*

In addition to the violations of ERISA's general fiduciary standards alleged in plaintiffs' first cause of action, plaintiffs' third cause of action asserts that Western Union violated certain specific fiduciary prohibitions contained in section 406 of ERISA. Section 406 provides, in relevant part:

(a)(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

. . . . .

(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan;

. . . . .

(b) A fiduciary with respect to a plan shall not—
(1) deal with the assets of the plan in his own interest or for his own account;
(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the

---

**6.** In accordance with the Court's holding that Western Union did not function as a fiduciary in enacting the amendment, those parts of the second, sixth, and eleventh causes of action which allege breaches of fiduciary responsibilities are also dismissed.

interests of the plan or the interests of its participants or beneficiaries.

29 U.S.C. § 1106.

In *Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir.), *cert. denied*, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982), the Second Circuit adopted a narrow interpretation of section 406 in declining to apply its provisions in a case involving the use of an employee pension plan's assets to defend the employer from a hostile tender offer. The specific part of the statute involved in that case was section 406(b)(2), however, the Court's language broadly encompassed all of section 406's prohibitions:

> We read this section of the statute as requiring a transaction between the plan and a party having an adverse interest .... We see no reason to think Congress intended the expansive interpretation of the various specific prohibitions of § 406 urged by the Secretary, particularly in light of the inclusion of the sweeping requirements of prudence and loyalty contained in § 404.

680 F.2d at 270. Relying on the *Donovan* decision, the district court in *Sutton* held that "for the provisions of 29 U.S.C. § 1106 to apply, there must be a transaction involving the monies, property, or other assets of the fund." 567 F.Supp. at 1199.

In the present case, there has been no transaction involving the assets of the fund as a consequence of the November 16, 1982 Amendment. Section 406 has therefore not been violated and plaintiffs' third cause of action is accordingly dismissed.

## C. *Inurement*

Plaintiffs' second cause of action alleges that Western Union (by amending the Plan) and MCI (by causing Western Union to amend the Plan) will cause Plan assets to "inure to the benefit of an employer, or be used other than for the exclusive purposes of providing benefits to participants in the Plan and beneficiaries, ..." Complaint para. 31. Section 403(c)(1) of ERISA provides that:

> Except as provided in paragraph (2) or (3) or subsection (d) of this section, or under sections 1342 and 1344 of this title (relating to termination of insured plans), the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

29 U.S.C. § 1103(c)(1).

Plaintiffs argue that this section was violated when their rights to Class A and Class 75 Pensions were eliminated because those benefits were fully funded at the time of amendment, so that the amendment produced a *surplus* in the fund which immediately inured to Western Union's benefit by relieving Western Union of the necessity of contributing to meet current liabilities of the Plan. Plaintiffs also argue that the surplus may ultimately result in an unlawful reversion of funds to Western Union upon termination of the Plan.

This Court has already held in part I-A of this opinion that an amendment eliminating unreduced early retirement benefits does not violate section 204(g) of ERISA. Having held that an employer is free under that provision to amend its plan so as to eliminate or reduce such unaccrued benefits, it would be anomalous to conclude that conduct not otherwise unlawful becomes so merely because those benefits were fully funded. Indeed, the effect of such a holding would be to encourage underfunding of pension plans—which would hardly be consistent with the broad remedial objectives which motivated Congress to enact ERISA. Such a holding would also be inconsistent with the delicate balance which Congress struck in enacting ERISA, *i.e.*, to protect accrued benefits, while at the same time affording employers maximum flexibility with respect to unaccrued benefits.

Accordingly, the Court concludes that the anti-inurement provisions of section 403(c)(1) do not prohibit an employer from amending a plan to reduce unaccrued benefits merely because such an amendment creates a surplus in the fund and may

provide a financial benefit to the employer.[7] Plaintiffs' second cause of action is therefore dismissed. *Cf. Holliday v. Xerox Corp.*, 555 F.Supp. 51, 54 (E.D.Mich.1982), *aff'd*, 732 F.2d 548 (6th Cir.1984).

### D. *Partial Termination*

#### 1. *Allocation of Benefits*

■ In their sixth cause of action, plaintiffs allege that the November 16, 1982 Amendment resulted in a partial termination of the Plan, pursuant to I.R.C. section 411(d)(3), which entitled them to an allocation of the Class A and Class 75 benefits that had accrued to them up to that date. The Plan Agreement provides that, in the event of a partial termination, plan assets are to be allocated in accordance with section 4044 of ERISA, 29 U.S.C. § 1344. Plan Agreement art. VIII, § 4(a).[8] Section 4044(a) provides that, when a plan terminates, the plan administrator shall allocate the assets of the plan among the participants and beneficiaries in accordance with six priority categories enumerated in that section. The fifth category is "all other nonforfeitable benefits under the plan[,]" and the sixth is *"all other benefits under the plan."* 29 U.S.C. § 1344(a)(5) & (6) (emphasis added).

Plaintiffs argue that category six encompasses their Class A and Class 75 early retirement benefits and that, since a partial termination has occurred, they are entitled to an allocation of those assets. Defendants dispute plaintiffs' premise that a partial termination has occurred but do not move to dismiss on that basis; instead, they contend that category six does not provide for the allocation of *unaccrued* benefits but is limited to forfeitable, *accrued* benefits and that this Court's determination that plaintiffs' unreduced early retirement benefits are not "accrued benefits" within the meaning of ERISA requires dismissal of plaintiffs' partial termination claim as well.

The Court agrees. It would be inconsistent with the congressional intent to afford maximum flexibility to an employer with respect to unaccrued benefits to conclude that the generic categories set forth in section 4044(a) require the allocation of benefits not protected by ERISA.

As the Court stated in *Petrella v. NL Industries, Inc.*, 529 F.Supp. 1357 (D.N.J. 1982),

> Assuming that the plaintiffs are correct, and that there was a partial termination, under § 411(d)(3) of the IRC the partial termination only entitles them to full vesting in their *accrued* benefits. Since the plaintiffs are already fully vested in their accrued benefits, there is no further relief to be granted in this Court.

*Id.* at 1371–72 (emphasis added).

Furthermore, assuming *arguendo* that category six encompasses plaintiffs' Class A and Class 75 early retirement benefits, plaintiffs' claim must nonetheless be dismissed. In arguing that the November 16, 1982 Amendment effected a partial termination, plaintiffs rely on various treasury regulations and revenue rulings under the I.R.C. However, as noted in *United Steelworkers of America v. Harris & Sons Steel Co.*, 706 F.2d 1289 (3d Cir.1983), the issue of whether a partial termination of a pension plan has occurred for purposes of ERISA is a question of contract interpretation and is not governed by tax precepts. *Id.* at 1298–1300. Since there is nothing in the Plan Agreement itself that supports plaintiffs' claim that a partial termination

---

**7.** The Court expresses no opinion on defendants' argument that it can terminate and retain the surplus remaining in the fund. The Court notes, however, that Treas.Reg. § 1.401–2(b)(1) provides that, upon termination, an employer may recover any balance remaining in the fund as a result of *actuarial error* (if it has reserved that right in the plan agreement), but may *not* recover a surplus that has accumulated "as a result of a change in the benefit provisions or in the eligibility requirements of the plan." 26

C.F.R. § 1–401–2(b)(1); *see Pollock v. Castrovinci*, 476 F.Supp. 606, 612–13 (S.D.N.Y.1979), *aff'd*, 622 F.2d 575 (2d Cir.1980).

**8.** By its own terms, section 4044 applies only when a plan *terminates*. It is relevant here only because the Plan Agreement incorporates its provisions and makes them applicable in a partial termination context.

occurred in the circumstances of this case, the Court finds as a matter of law that none has occurred.[9]

### 2. *Failure to Report*

Plaintiffs also allege in their sixth cause of action that Western Union violated certain "notice and reporting" requirements of ERISA. Specifically, they allege: failure to request a determination from the Internal Revenue Service regarding whether the amendment effected a partial termination of the Plan; failure to comply with section 4041(a) of ERISA, 29 U.S.C. § 1341(a), which requires an employer to file a notice with the Pension Benefit Guaranty Corporation ("PBGC") before a plan is terminated; and, failure to comply with section 4043(a) of ERISA, 29 U.S.C. § 1343(a), which requires a plan administrator to give the PBGC notice of a "reportable event."

■ Plaintiffs' claim for failure to comply with section 4041(a) of ERISA, 29 U.S.C. § 1341(a), which requires a plan administrator to file a notice with the PBGC before termination, cannot possibly stand because the Court has concluded that there has been no such termination in this case.

■ In connection with plaintiffs' claim for failure to request an I.R.S. determination of whether a partial termination occurred, the Court notes that plaintiffs have cited no specific provision of ERISA requiring an employer to seek such a determination. That omission in plaintiffs' pleadings and papers is not surprising since, under ERISA, a partial termination does not trigger an allocation of plan assets to participants and beneficiaries and, under the

I.R.C., the occurrence of a partial termination is only relevant insofar as it affects the employer's right to favorable tax treatment. *See United Steelworkers, supra,* 706 F.2d at 1299. Thus, ERISA does not afford plaintiffs with a cause of action based upon Western Union's failure to seek that determination.

■ Finally, plaintiffs' claim for failure to report a "reportable event" *does* state a claim. Subsection (b)(2) of section 4043 provides that a reportable event occurs when a plan amendment is adopted that decreases "the benefit payable with respect to any participant." Since the November 16, 1982 Amendment reduced the amount payable at early retirement it clearly was a reportable event within the meaning of that provision, and Western Union was required to report it.[10] However, it is unclear what relief plaintiffs would be entitled to under this claim beyond an order requiring Western Union to report the amendment.[11]

In accordance with the foregoing, plaintiffs' sixth cause of action is dismissed, except for plaintiffs' claim regarding Western Union's breach of its fiduciary duties as plan administrator for failure to report a "reportable event" under section 4043 of ERISA, 29 U.S.C. § 1343.

## II

### COMMON LAW CLAIMS

#### A. *Breach of Contract*

#### 1. *Breach of Plan and Trust Agreement*

■ Plaintiffs' seventh cause of action alleges, *inter alia,* violations of specific

---

**9.** The Court thus expresses no view as to whether the November 16, 1982 Amendment effected a partial termination under the treasury regulations and revenue rulings cited by plaintiffs.

**10.** Section 4003(e) of ERISA, 29 U.S.C. § 1303(e) gives *the PBGC* the right to sue to redress violations of subchapter III, which includes the provision relied upon by plaintiffs. It does not give participants and beneficiaries the right to sue. In *Cicatello v. Brewery Workers Pension Fund,* 434 F.Supp. 950 (W.D.N.Y. 1977), *aff'd,* 578 F.2d 1366 (2d Cir.1978), the court held that it lacked jurisdiction over a claim brought by *employees* alleging a violation

of the "reportable event" provision, section 4043 of ERISA, 29 U.S.C. § 1343. The instant case is somewhat different from *Cicatello,* however, because plaintiffs sue under the section governing fiduciary duties, section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B), rather than under section 4043 itself, and may have standing under section 502(a) of ERISA, 29 U.S.C. § 1132(a).

**11.** The same of course would also be true with respect to the other alleged failures to report referred to above.

provisions of the Plan and Trust Agreement documents by Western Union. Such a "breach of contract" claim is cognizable under ERISA and thus governed by federal common law. Section 502, 29 U.S.C. § 1132, specifically provides for the enforcement of the terms of a plan agreement and gives a participant or beneficiary the right to bring a civil action:

> (a)(1)(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>
> . . . . .
>
> (3)(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; ...

In this case, however, the only alleged breach of contract cited in the Complaint consists of conduct which the Court has already concluded did not violate ERISA,[12] i.e., the reduction of the early retirement benefits. Moreover, the Plan Agreement clearly contemplates the possibility of such an amendment to the Plan, in that it provides that "Western Union International may amend, terminate or suspend this plan at any time or from time to time ...." Art. VIII, § 1. Finally, to the extent that plaintiffs seek recovery on a *state* common law breach of contract theory, that cause of action is preempted by section 514(a) of ERISA, which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...." 29 U.S.C. § 1144(a). It follows that this Court's determination that there has been no ERISA violation in this case precludes plaintiffs' breach of contract claim.

### 2. *Breach of the Summary Plan Description*

■ Plaintiffs' contention that there was a specific violation of the provision of the Summary Plan Description set forth below is untenable. That provision provides:

### CONTINUANCE OF THE PLAN

The Company intends to continue the Plan indefinitely and to meet any foreseeable situations that may occur. To protect against any unforeseen situations, however, the Company does reserve the right to change or even terminate the Plan. If it becomes necessary to discontinue the Plan, the assets of the Pension Fund held by the Trustee will be used to provide benefits according to the terms of the Plan and Trust Agreement. A Plan discontinuance may result in reduction of pension payments to certain highly compensated employees, in accordance with the requirements of the Internal Revenue Service.

Summary Plan Description 17.

The Court fails to see how Western Union's action in amending the Plan can be even arguably regarded as a breach of this provision, especially since the provision specifically reserves Western Union's right to change the Plan. Despite plaintiffs' argument that Western Union was only authorized to change the Plan if "necessary," that word does *not* appear in the sentence in which Western Union reserves its right to amend but rather in the following sen-

---

12. The Complaint alleges, in pertinent part:

16. The Plan provides for the creation of a Trust, pursuant to a Trust Agreement, with contributions to be held therein for the exclusive benefit of employees of the companies ....

17. The Plan and Trust Agreement mandate that the fiduciaries act solely in the interest of the Plan participants ....

18. The Trust Fund according to the Plan may never be directed to purposes other than the exclusive benefit of participating employees ....

19. More particularly, the Plan and Trust Agreement do not permit amendment to divert Trust Fund assets from their intended beneficiaries....

20. The Plan also protects benefits in the event of cessation of contributions or partial termination of the Plan ....

Complaint paras. 16–20.

tence, which deals with discontinuance of the Plan.

The Court, therefore, concludes that any state law claim for breach of the Summary Plan Description is preempted, and none exists under federal common law since the terms of the agreement were not breached and since ERISA was not violated.

### 3. *Unilateral Contract Theory*

 Plaintiffs further argue that, even though specific contractual provisions may not have been breached, they are entitled to recover on a theory of unilateral contract because they performed their duties as employees in exchange for a promise of future full early retirement benefits. To the extent that plaintiffs allege a state common law cause of action, that action is likewise preempted by section 514(a) of ERISA. Furthermore, no such claim exists under federal common law. As the Third Circuit has recently held, "[w]here Congress has established an extensive regulatory network and has expressly announced its intention to occupy the field, federal courts will not lightly create additional rights under the rubric of federal common law." *Van Orman v. American Insurance Co.,* 680 F.2d 301, 312 (3d Cir.1982).

Plaintiffs' seventh cause of action is therefore dismissed in its entirety.

### B. *Tortious Interference with Contractual Relations*

In their eighth cause of action, plaintiffs allege that MCI tortiously induced Western Union to violate its contractual obligations. Since the Court has held that no contractual obligations were breached, no claim for tortious interference can be sustained. Furthermore, state claims for tortious interference with contractual relations are also preempted by section 514(a) of ERISA. Plaintiffs' eighth cause of action is therefore dismissed.

### C. *Unjust Enrichment*

In their ninth cause of action, plaintiffs allege that "implementation of the November 16, 1982 Amendment to the Plan has unjustly enriched or will unjustly enrich defendants by creating a surplus." Complaint para. 45. Any state common law claim for unjust enrichment is preempted by section 514(a) of ERISA. To the extent that plaintiffs seek to assert a federal common law claim, that claim fails for the reasons stated in *Van Orman, supra,* 680 F.2d 301. In that case, the Third Circuit specifically held that there is no federal common law of unjust enrichment under ERISA. *Id.* at 310–13. Plaintiffs' ninth cause of action is accordingly dismissed.

### D. *Third Party Beneficiary Contract/Estoppel*

Plaintiffs allege in their tenth cause of action that they are third party beneficiaries of the following provision of the Purchase and Sale Agreement between Xerox and MCI:

*Employee Benefits.* Each of MCI and purchaser agrees that, following the Closing, it shall take no action to reduce the existing pension or other employee benefits of the Company's employees. Art. VIII, § 8.02.

Defendants deny that "Company's employees" refers to the employees of Western Union, and claim that the phrase refers only to employees of WUI, Inc. Plaintiffs, however, contend in their twelfth cause of action that defendants are estopped from denying that the agreement refers to them because the defendants assured them that it did, and because they relied upon those assurances to their detriment.

 Both the tenth and twelfth causes of action are pendent state claims. Dismissal of pendent state claims is recommended in cases where the federal claim to which the pendent state claims relate is disposed of prior to trial. *Federman v. Empire Fire & Marine Insurance Co.,* 597 F.2d 798, 809 (2d Cir.1979); *see United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("pendent jurisdiction is a doctrine of discretion, not of plaintiffs' right"). In this

case, these pendent state claims do not relate to any federal claim that has not been dismissed. The only federal claims remaining are: (1) that part of the sixth cause of action which alleges that Western Union violated the notice and reporting requirements of section 4043 of ERISA, 29 U.S.C. § 1343, by failing to report a "reportable event"; and (2) the thirteenth through fifteenth causes of action, which allege discrimination and retaliation against plaintiffs in violation of section 510 of ERISA, 29 U.S.C. § 1140. Since those claims bear no relationship to the pendent state claims, plaintiffs' tenth and twelfth causes of action are dismissed.[13]

#### E. *Incorporation Theory*

Plaintiffs' eleventh cause of action alleges that the aforesaid Purchase and Sale Agreement "became upon execution" a part of the Plan itself; and that defendants' violation of the Purchase and Sale Agreement therefore constituted a violation of the Plan. Plaintiffs, however, offered no factual or legal support whatsoever for their novel "incorporation" theory. The eleventh cause of action is therefore dismissed.

### CONCLUSION

Plaintiffs' first through fifth and seventh through twelfth causes of action are dismissed. That part of the sixth cause of action which alleges that Western Union violated the notice and reporting requirements of section 4043 of ERISA, 29 U.S.C. § 1343, by failing to report a "reportable event" states a claim. The remainder of the sixth cause of action is dismissed.

The Court sees no reasons why an appeal from the Court action dismissing these claims should not be taken immediately, especially since pendent claims have been dismissed in accordance with the dismissal of the federal claims. The Court, there-

fore, certifies pursuant to Rule 54(b) that there is no just reasons for delay of entry of judgment on the claims dismissed herein.

It is SO ORDERED.

---

**13.** A related action by MCI involving this third party beneficiary claim is presently pending in state court. In that action, MCI seeks a declaratory judgment that "Company's employees" does not refer to plaintiffs. That case was removed to this Court by plaintiffs and subsequently remanded upon MCI's motion. *See Opinion & Order,* 83 Civ. 2660 (JES) (S.D.N.Y. July 11, 1984).