Barry ENGLER, Plaintiff,

v.

CENDANT CORPORATION, and International Business Machines Corporation, Defendants.

No. 04–CV–05215(ADS)(MLO).

United States District Court, E.D. New York.

May 23, 2006.

Hoffinger Stern & Ross, LLP, New York (Philip S. Ross, of Counsel), for the Plaintiff.

Grotta, Glassman & Hoffman, P.C., New York, NY (David M. Wirtz, Joanne Skolnick, of Counsel), for the defendant Cendant Corporation.

Quinn Emanuel Urquhart Oliver & Hedges, LLP, New York, NY (Peter E Calamari, of Counsel), for the defendant International Business Machines Corporation.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This action was commenced by Barry Engler ("Engler" or the "Plaintiff") against his former employers, Cendant Corporation ("Cendant") and International Business Machines Corporation ("IBM") (collectively the "Defendants") to recover severance and medical benefits allegedly owed to him under an employee benefit plan. The plaintiff's amended complaint asserts causes of action against the defendants for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001–461, and state law claims against Cendant arising under New York State law for fraud, negligent misrepresentation, and breach of contract. Presently before the Court is a motion by the defendants to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") for failure to state a claim.

### I. BACKGROUND

### A. PROCEDURAL HISTORY

Engler first filed this action in New York State Supreme Court, Nassau County, against the defendants alleging state common law causes of action for fraudulent inducement, negligent misrepresentation, and breach of contract. Cendant removed the action to this Court, pursuant to 28 U.S.C. § 1441, stating that the Plaintiff had asserted claims for employee benefits governed by the ERISA. Cendant and IBM then moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6), on the ground that Engler's common law claims were preempted by ERISA.

On August 6, 2005, the Court granted the Defendants motion to dismiss the complaint, finding that the complaint failed to properly allege any cause of action against IBM and that the state-law claims against the defendants seeking benefits under an ERISA plan were preempted by ERISA. However, the Court granted Engler leave to file an amended complaint to assert both ERISA and state law claims against the Defendants.

## B. THE AMENDED COMPLAINT

The following facts are taken from the amended complaint and the exhibits attached, which include letters and other material Engler received from Cendant as well as materials relating to IBM's employee benefit plan.

Engler was employed by Cendant and its predecessor Avis from 1976 to 2002, a period of more than twenty-five years. On December 7, 2001, Cendant awarded Engler a Certificate of Service recognizing Engler's "successful completion of 25 years of dedicated service." Ten days later, on December 17, 2001, Engler received a letter from IBM extending to him an offer of employment with IBM Global Services ("IBM Offer of Employment") to work on the Cendant account. Engler alleges that the IBM Offer of Employment was part of an outsourcing agreement between IBM and Cendant in which certain Cendant employees were offered employment with IBM.

In conjunction with the offer of employment, Engler received a letter from Cendant advising him of special considerations that Cendant and IBM agreed he would be entitled to if he accepted the IBM offer of employment. In the letter, dated December 21, 2001, stated that "IBM will recognize all service credit that is recognized by Cendant today for all purposes including eligibility and vesting in an IBM pension plan." Am. Compl. Ex. 3. The letter also references the alleged outsourcing agreement between Cendant and IBM. On December 26, 2001, allegedly based upon the representations contained in the letters from Cendant and IBM, Engler accepted employment with IBM.

On February 1, 2002, Engler commenced employment with IBM. On February 11, 2002, Engler received a second letter from Cendant describing several benefits that Cendant and IBM had worked together to make available to Engler, provided he execute an Agreement and General Release not to sue Cendant. The letter congratulated him on his new opportunity with IBM and stated Cendant stated that there were "several benefits that Cendant and IBM have worked together to make available to you." Am. Compl. Ex. 4. The letter went on to list benefits such as salary, a profit sharing bonus, stock options, health, welfare, and pension benefits, and severance pay. As to severance pay, the letter stated: "should IBM terminate your employment other than for 'Cause' during the first 24 months following your employment with IBM, you shall receive severance pay from IBM under the greater of the severance pay plans (Cendant or IBM) based on combined credited service." Am. Compl. Ex. 4. On March 26, 2002, Engler executed the Agreement and General Release not to sue Cendant ("Cendant Release Agreement").

On May 3, 2004, approximately two years and three months after beginning employment at IBM, Engler received a notice that his employment would be terminated as of June 2, 2004. Attached to the notice of termination was a benefits package entitled the IBM Global Service Delivery Resource Action ("ISRA") Summary Plan Description. The ISRA Plan Description stated that eligible employees who comply with the requirements of the ISRA "will receive the greater of one week of pay for each full six month period of service, up to a maximum of twenty-six weeks of pay, or two weeks pay." In addition, the ISRA provided for continuing health coverage for 3 to 12 months, depending on the employee's years of service with IBM. The notice informed any employees affected by the lay-offs to contact Tom Laskowski ("Laskowski") if they had any question regarding clarification of employee benefits.

IBM offered Engler one month of severance and three months of medical benefits, which did not take into account any of Engler's years of service with Cendant. Engler contends that if IBM had included his service with Cendant, he would have been entitled to twenty-six weeks severance pay and one year of transition medical benefits.

Engler contacted Laskowski, as directed by the notice of termination, concerning the calculation of his severance and medical benefits and informed him of the letters from Cendant that promised he would be entitled to certain benefits. Laskowski allegedly refused to recalculate Engler's service time to include the years he was employed by Cendant. Laskowski provided Engler with instructions to contact Lisa Burke or Baba Zipkin, who were legal counsel for the ISRA Plan actions.

On June 2, 2004, counsel for the Plaintiff sent a letter to legal counsel for the ISRA Plan disputing IBM's calculations of Engler's severance and medical benefits for failing to include his years of service with Cendant. According to the amended complaint, Burke responded for IBM by contacting counsel for the Plaintiff and stating that Engler's application to recalculate his benefits was denied because IBM had never authorized Cendant to write the benefits letter dated December 21, 2001. IBM did not provide any written denial, further explanation, or instructions on how to appeal the denial. Claiming that any administrative review of the unwritten decision would be futile, Engler commenced this law suit.

## II. DISCUSSION

### A. THE MOTION TO DISMISS STANDARD

 On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court should dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Curto v. Edmundson*, 392 F.3d 502, 503 (2d Cir.2004); *King v. Simpson*, 189 F.3d 284, 286 (2d Cir.1999); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). The Court must accept all well-pled factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Koppel v. 4987 Corp.*, 167 F.3d 125, 127 (2d Cir.1999); *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999).

### B. THE ERISA CLAIMS

#### 1. Generally

 Congress enacted ERISA as a remedial statute to protect the interests of the beneficiaries of private retirement plans by reducing the risk of the loss of pension benefits. *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 22 (2d Cir. 1996). "ERISA established a comprehensive federal statutory program intended to control abuses associated with pension benefit plans." *Id.*

ERISA provides a number of express causes of action that may be derived from rights found in the employee benefit plan or within the statute itself. ERISA provides that "[a] civil action may be brought-by a participant or beneficiary to recover benefits due to him under the terms of his plan ...." 29 U.S.C. § 1132(a)(1)(B). A claim under Section 1132(a)(1)(B) is essentially the assertion of a contractual right under a benefit plan. *Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 142 (2d Cir.1999). Some courts have stated that the remedy for "benefits due ... under a plan" may be used only to recover the benefits explicitly stated in the benefit plan. *See, e.g., Clair v. Harris Trust & Savs. Bank*, 190 F.3d 495, 497 (7th Cir.1999) ("[I]nterest is not a benefit specified anywhere in the plan, and only benefits specified in the plan can be recovered in a suit under ... [Section 1132(a)(1)(B) ].""). However, the Second Circuit has stated, that "[a] benefit implicitly due under the terms of a plan would seem to be a 'benefit due ... under the terms of his plan.'" *Dunnigan v. Metro. Life Ins. Co.*, 277 F.3d 223, 231 (2d Cir. 2002).

The ISRA at issue in this case is a severance and health plan that falls within ERISA's definition of a "welfare benefit plan" under 29 U.S.C. § 1002(1). *See Schonholz v. Long Island Jewish Medical Center*, 87 F.3d 72 (2d Cir.1996); *Young v. Standard Oil*, 849 F.2d 1039, 1045 (7th Cir.1988) ("Under ERISA, severance benefit plans qualify as welfare benefit plans."). Unlike retirement or pension benefits, welfare benefits do not accrue or vest and are only subject to some disclosure and fiduciary requirements, *see* 29 U.S.C. §§ 1101–14, 1021–31. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 978 (7th Cir.1999). "As a result, employers may freely alter or eliminate these plans without violating ERISA." *Id.* However, ERISA requires employers to provide employees with summary plan descriptions and notify them of material modifications to the plans within a statutorily allotted time period. *Id.*

## 2. Standing

A threshold issue in all actions under ERISA is whether the plaintiff has standing to pursue a claim. The civil enforcement provision of ERISA provides standing only to a "participant or beneficiary" of an employee benefit plan. 29 U.S.C. § 1132(a)(1)(B). ERISA defines a "participant" as:

[A]ny employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7).

Considering that Engler is no longer an employee of the Defendants, he may only bring a suit under ERISA if he is considered a "participant" that "may become eligible to receive a benefit" from the plan. The Supreme Court has stated that "[i]n order [for a participant] to establish that he or she 'may become eligible' for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117–18, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *see also Mullins v. Pfizer, Inc.*, 23 F.3d 663, 667 (2d Cir.1994).

IBM argues that Engler has no colorable claim to benefits because he did not sign a general release to IBM as is required to be eligible for benefits under the ISRA Plan. The Court notes that several courts have ruled that a plan may properly

condition the right to benefits upon the execution of a release. *See Burrey v. Pacific Gas and Electric Co.,* 159 F.3d 388, 396 (9th Cir.1998) (holding that plaintiffs do not have a colorable claim to benefits in the absence of the required release); *Whalley v. Reliance Group Holdings, Inc.,* 2001 WL 55726, 2001 U.S. Dist. LEXIS 427 (S.D.N.Y.2001); *Carlson v. SEI Corp.,* No. 98–4326, 1999 WL 54526, 1999 U.S. Dist. LEXIS 1220 (E.D. Pa.1999). *But see Panaras v. Liquid Carbonic Industries Corp.,* 74 F.3d 786, 788 (7th Cir.1996) (reversing the dismissal of an action under ERISA for failure to sign a release).

■ Here, even though IBM's argument appears to be well supported by case law, at this time the Court cannot consider the merits of its argument. The Second Circuit has stated " 'that when standing is challenged on the basis of the pleadings, we accept as true all material allegations of the complaint, and ... construe the complaint in favor of the complaining party.' " *Fin. Inst. Ret. Fund v. Office of Thrift Supervision,* 964 F.2d 142, 149 (2d Cir.1992) (citing *Pennell v. City of San Jose,* 485 U.S. 1, 7, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988)). The Court cannot consider the admissions or statements in the parties' memorandum of law as factual allegations at this stage of the case. *Henthorn v. Dep't of Navy,* 29 F.3d 682, 688 (D.C.Cir.1994); *Shaw v. District of Columbia,* No. 05–1284(CKK), 2006 WL 1274765, at *3 (D.D.C. May 8, 2006) (citing *Behrens v. Pelletier,* 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)). Confining its review to the facts alleged in the amended complaint and the exhibits attached, the Court finds no reference to any fact regarding whether or not Engler signed the general release in favor of IBM. Therefore, IBM's arguments for dismissing the complaint on this ground are premature.

### 3. As to the ERISA Claim against IBM

■ IBM contends that Engler fails to state a claim because he failed to plead that he exhausted his administrative remedies before filing this action. Although not specifically required by statute, the Second Circuit generally requires exhaustion of administrative remedies in order to prevail on a claim for the denial of ERISA benefits when that claim is based on a right found in the plan. *Burke v. Kodak Retirement Income Plan,* 336 F.3d 103, 107–08 (2d Cir.2003); *see, e.g., Chapman v. ChoiceCare Long Island Term Disability Plan,* 288 F.3d 506, 511 (2d Cir.2002). Administrative exhaustion permits trustees to make the initial decisions under their plan, and creates a record that may be reviewed by a court. *Davenport v. Abrams, Inc.,* 249 F.3d 130, 133 (2d Cir.2001).

■ However, here the Plaintiff's claim is not solely based on rights found in the ISRA Plan or the interpretation of the terms of the plan, but asserts statutory violations of ERISA based on a fraudulent and misleading administration of the plan. The Second Circuit has not decided whether administrative exhaustion is required to allege a statutory violation of ERISA. *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 102 (2d Cir.2005); *Richards v. FleetBoston Financial Corp.,* No. 04–1638–JCH, 2006 WL 980565, at *21–22 (D.Conn. Mar.31, 2006) (collecting cases). The Second Circuit has noted that district courts "routinely" dispense with the exhaustion prerequisite where the plaintiff alleges a statutory ERISA violation. *Nechis,* 421 F.3d at 102 (citing *De Pace v. Matsushita Elec. Corp. of Am.,* 257 F.Supp.2d 543, 557–58 (E.D.N.Y.2003)). This is so because unlike a claim for benefits under a plan, the administrators have no expertise in deciding a claim that asserts a statutory right. *Richards,* 2006

WL 980565, at *23. "Accordingly, one of the primary justifications for an exhaustion requirement in other contexts, deference to administrative expertise, is simply absent." *Id.*

█ In addition, courts have held that "[e]xhaustion is unnecessary, however, when there is a 'clear' and 'positive' showing that the undertaking would be futile." *Spann v. AOL Time Warner, Inc.,* 219 F.R.D. 307, 316–17 (S.D.N.Y.2003) (citing *Davenport,* 249 F.3d at 133); *Selby v. Principal Mutual Life Insurance Co.,* 197 F.R.D. 48, 56 n. 10 (S.D.N.Y.2000). To demonstrate that a claim falls within the futility doctrine, the Second Circuit requires a "clear and positive showing" that the assertion of the claim before the administrator would be futile. *Davenport,* 249 F.3d at 133 (citing *Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588, 594 (2d Cir.1993)). On a motion to dismiss, in which the Court is required to draw all reasonable inferences in favor of the plaintiff and assume "that the allegations of wrongdoing are true," the Court asks whether the "internal remedies indeed may have been proved futile." *De Pace,* 257 F.Supp.2d at 560 (citations omitted). Among the factors relevant in deciding to apply the futility doctrine, is whether the defendant made a formal or an informal denial of benefits, and whether the defendant has communicated that the decision is final. *See Barnett v. IBM Corp.,* 885 F.Supp. 581, 588 (S.D.N.Y. 1995); *see also Davenport,* 249 F.3d at 133–34.

█ Here, Engler has alleged a clear and positive reason why exhaustion would be futile, namely, he never received any written notice denying his request for benefits. The failure to provide a written notice of benefits violates ERISA and the express requirements under the ISRA Plan. ERISA requires that a denial of benefits be in writing and notify the claim-

ant of appeal procedures under the plan. *See* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503–1. In addition, the notice of denial must be comprehensible and provide the claimant with the information necessary to perfect his claim, including the time limits applicable to administrative review. *Id.* "A notice that fails to substantially comply with these requirements does not trigger a time bar contained within the plan." *Burke,* 336 F.3d at 107–08.

IBM's ISRA Plan Description provided procedures for the written notice of denial and appeal as required under ERISA. The ISRA Plan Description states, "The ISRA Project Office will make the final determination of which employees comply with the requirements necessary to receive the payments and benefits of the ISRA.... The ISRA Project Office will also provide the employee a letter outlining the reason(s) for any denial of payments or benefits." Am. Compl. Ex. 6. Further, the ISRA provides for a claim review procedure:

If an application for plan benefits is denied whole or in part, written notice of the denial will be made to the claimant within a reasonable period of time after receipt of the claim. The notice of denial will include specific reasons for the denial with reference to the section of the plan on which denial is based, a description of any additional information necessary to resubmit the claim and an explanation of the claim review procedure. Within 60 days after receiving the denial, a claimant may request a review of the claim by writing to the Plan Administrator. A prompt review will be made after a request is received. A written decision on the review will normally be furnished within 60 days after the appeal is received.

Am. Compl. Ex. 6.

Engler alleges that he did not receive any written notice of the denial, or the

reasons for such denial, or an explanation of the review procedure. The Court finds that this failure to comply with the required procedures of the ISRA Plan renders futile any attempt Engler could have made to exhaust his administrative remedies.

However, the failure to provide a written notice, as required under § 1133, does not entitle the plaintiff to an award of benefits. *Camarda v. Pan American World Airways, Inc.*, 956 F.Supp. 299, 312 (E.D.N.Y.1997). The Court is not aware of any authority granting an award of benefits for a procedural violation where the decision to deny benefits was ultimately correct. *See Borowski v. IBM*, 978 F.Supp. 550, 557 (D.Vt.1997); *Fischman v. Blue Cross & Blue Shield*, 775 F.Supp. 513, 517 (D.Conn.1991).

In this light, the Defendant argues that even if the Plaintiff was provided with a written denial of benefits, that decision would have been correct and would not have been arbitrary and capricious. IBM's argument is misplaced. It is true that a decision of an administrator under a plan that grants her with discretionary authority will be reviewed by the court under either an abuse of discretion or arbitrary and capricious standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In this case, even if the ISRA Plan Administrator was vested with such discretion, it is alleged that no valid exercise of that discretion was exercised. Further, the Second Circuit has recently held that a denial that fails to comply in any reasonable respect with the procedures of the plan or the regulations is subject to de novo review. *Nichols v. Prudential Ins. Co. of America*, 406 F.3d 98, 101 (2d Cir. 2005) (holding that a claim that is "deemed denied" by expiration of time is not denied by exercise of discretion).

Accordingly, at this stage of the litigation, drawing all reasonable inferences in favor of the Plaintiff, it appears that IBM's oral decision to deny the Plaintiff benefits may be subject to a de novo review. With only the amended complaint and the exhibits attached, the record is incomplete, and the Court cannot, at this point, undertake such a review. As far as the amended complaint alleges, no written record exists in which IBM dutifully considered Engler's claim to benefits. In order to properly resolve this issue, the Court must consider all the available evidence on both sides and apply the general principles of trust and contract law. Further, regardless of the standard the Court is required to apply to its subsequent determinations, Engler has alleged in the amended complaint that the decision to disregard his years of service to Cendant was incorrect, and, therefore, arbitrary and capricious. These allegations are sufficient to survive this motion. Therefore, the motion to dismiss for failure to state a claim by IBM is denied.

### 4. As to the ERISA Claim against Cendant

Engler claims that Cendant acted as an ERISA fiduciary when it represented to him that his years of service at Cendant would be included by IBM when it calculated his benefits. In a suit to recover benefits under ERISA, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable. *See* § 1132(d)(2); *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir.1989); *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324–25 (9th Cir. 1985); *Wojciechowski v. Metropolitan Life Ins. Co.*, 75 F.Supp.2d 256, 261 (S.D.N.Y.,1999) (holding that a former employer was not liable as a fiduciary under a different employer's plan); *Georgas v. Kreindler & Kreindler*, 41 F.Supp.2d 470,

474 (S.D.N.Y.1999) (holding that an employer was not a fiduciary of a benefit plan where that employer had no decision-making role in administration or management of benefits). "ERISA permits employers to wear 'two hats,' and ... they assume fiduciary status 'only when and to the extent' that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA." *Belade v. ITT Corp.*, 909 F.2d 736, 738 (2d Cir.1990); (quoting *Amato v. Western Union Int'l*, 596 F.Supp. 963, 968 (S.D.N.Y.1984)).

Here, Engler alleges that Cendant was acting as an ERISA fiduciary in making representations contained in the benefits letters it sent to him about the time he commenced employment with IBM. This bald assertion cannot sustain a claim under ERISA. Engler has not identified a qualified plan that Cendant was acting as a fiduciary under or alleged any fact pertaining to a plan under which Cendant could have been exercising fiduciary discretion. Engler alleges only that Cendant sent him two letters regarding benefits that he would be entitled to if he were to commence employment with IBM. These letters were sent to him more than two years prior to the implementation of the ISRA Plan. Insofar as the plan was not in existence at the time the letters were sent, Cendant's actions cannot be construed as discretionary or fiduciary acts under that plan. Accordingly, the motion to dismiss the ERISA claim against Cendant is granted.

## C. THE STATE LAW CLAIMS

### 1. Preemption

Common law actions that "relate to" employee benefit plans are preempted by ERISA. *See Cicio v. John Does 1–8*, 385 F.3d 156, 158 (2d Cir.2004); *Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 591 (2d Cir.1993) (stating that ERISA preempts state law contract claims pertaining to the denial of benefits under employee benefit plans); *Smith v. Dunham–Bush, Inc.*, 959 F.2d 6, 9 (2d Cir.1992) (holding that a state law of general application "relates to" pension plan for preemption purposes, although it had only an indirect effect on the plan). In other words, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 124 S.Ct. 2488, 2495, 159 L.Ed.2d 312 (2004); *see also Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 143–145, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). In determining whether ERISA preempts a state-law cause of action, "the queries are (a) whether the contract claim asserted is related to an employee benefit plan, and, if so, (b) whether there is an exception under ERISA that precludes pre-emption of the state law [claim]." *Devlin v. Transportation Communications Intern. Union*, 173 F.3d 94, 101 (2d Cir.1999).

The Plaintiff's amended complaint asserts claims against Cendant for fraudulent inducement, negligent misrepresentation, and breach of contract, all of which involve Engler's reliance on Cendant's representations when he changed employment from Cendant to IBM. Similar state law claims against former employers have been permitted where the Plaintiff is not seeking damages under an ERISA plan. *See, e.g., Lam v. American Express Co.*, 265 F.Supp.2d 225, 232 (S.D.N.Y.2003).

These claims that the Plaintiff asserts appear to be independent of any ERISA plan. The allegations under these causes of action do not appear to seek benefits under the IBM plan, but rather, monetary damages for the representations Cendant

made with regard an alleged agreement it had with IBM. The Plaintiff's state law claims do not fall within the civil enforcement remedy of ERISA because at the time the alleged torts occurred, Engler was not a "participant" of any such ERISA plan. *See Simon v. General Elec. Co.,* 263 F.3d 176, 177–78 (2d Cir.2001).

Moreover, the Plaintiff does not allege that Cendant misrepresented any benefits promised under the terms of an ERISA plan. *See Aetna Health Inc. v. Davila,* 542 U.S. 200, 124 S.Ct. 2488, 2496, 159 L.Ed.2d 312 (2004). Rather, The Plaintiff alleges that Cendant fraudulently and negligently misrepresented that IBM would provide him with credit for his years of service at Cendant, without regard to the existence or terms of any ERISA plan. Indeed, the allegations specifically make reference to Cendant's actions with respect to inducing Engler to enter into the transition of employment and the Cendant Release Agreement, not an ERISA qualified welfare benefit plan. Accordingly, the Court finds that the New York state law claims against Cendant, as alleged in the amended complaint, are not preempted by ERISA.

## 2. Fraud

To state a claim for fraud under New York law, a plaintiff must allege (1) a material, false representation by a defendant; (2) made with the intent to defraud; (3) reasonable reliance upon the representation by the plaintiff; and (4) causing damage to the plaintiff. *Suez Equity Investors, L.P. v. Toronto–Dominion Bank,* 250 F.3d 87, 104 (2d Cir.2001).

Rule 9(b) adds additional pleading requirements with respect to allegations of fraud. This specificity is necessary to (1) "afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based;" (2) "[t]o safeguard ... defendant's reputation and goodwill from

improvident charges of wrongdoing;" and (3) "to inhibit the institution of strike suits." *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1057 (2d Cir.1993) (quoting *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990) (citations omitted)).

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b). "Malice, intent, knowledge and other condition of mind of a person [however] may be averred generally." *Id.* In order to comply with Rule 9(b), the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 51 (2d Cir.1995) (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993)).

The amended complaint properly pleads fraud and has met the requirements of Rule 9(b). Engler clearly identifies the alleged misrepresentations made by Cendant by referencing the statements contained in the letters Cendant sent to Engler with regard to the benefits he should expect if he signed the Cendant Release Agreement and commenced employment with IBM. In fact, the letters are attached to the amended complaint as exhibits and identify the circumstances of the statement promising such benefits in great detail. Among other things, the letters stated that "IBM will recognize all service credit that is recognized by Cendant today." Engler contends that Cendant knowingly made this false representation in order to induce him to accept the transition employment with IBM and to sign the Cendant Release Agreement. The amended complaint further alleges that he did not receive credit from IBM and that this violated the terms

of an alleged outsourcing agreement between Cendant and IBM. "The mere allegation that such evidence does exist is sufficient to support the inferences to be drawn therefrom and thus overcome a motion to dismiss for failure to state a claim on which relief can be granted." *Leibowitz v. Cornell University*, 445 F.3d 586, 2006 WL 1046212 (2d Cir. Apr.21, 2006) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 76, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). In addition, these allegations are sufficiently particular to state a claim for fraud. Accordingly, the motion by the defendant Cendant to dismiss the fraud claim is denied.

### 3. Negligent Misrepresentation

■ To state a claim for negligent misrepresentation under New York law, a plaintiff must show that: "(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance." *Parrott v. Coopers & Lybrand, L.L.P.*, 95 N.Y.2d 479, 484, 741 N.E.2d 506, 718 N.Y.S.2d 709 (2000) (internal quotation marks and citation omitted). "These indicia, while distinct, are interrelated and collectively require a third party claiming harm to demonstrate a relationship or bond with the once-removed accountants." *Id.* (internal quotation marks and citation omitted).

■ At this stage of the litigation, Engler need only give fair notice of the negligent misrepresentation claim and the grounds upon which it rests. *See Conley*, 355 U.S. at 47, 78 S.Ct. 99, 2 L.Ed.2d 80. The heightened pleading requirements of Rule 9(b) are not required. *In re LILCO Securities Litigation*, 625 F.Supp. 1500, 1504 (E.D.N.Y.1986) ("[N]egligent misrep-

resentation is not a claim that necessitates the particularized pleading of Rule 9(b)."). Engler alleges that the letters Cendant wrote to him were negligent representations that he relied on when he accepted employment with IBM and signed the Cendant Release Agreement. At this stage of the litigation, Engler has set forth sufficient facts to give fair notice of the negligent misrepresentation claim. Accordingly, the motion by defendant Cendant to dismiss the negligent misrepresentation claim is denied.

### 4. Breach of Contract

■ The essential elements of a breach of contract claim are: (1) the formation of an agreement by an offer, acceptance, and consideration; (2) performance by one party; (3) breach of the agreement by the other party; and (4) damages. *See First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 169 (2d Cir.1998); *Kaplan v. Aspen Knolls Corp.*, 290 F.Supp.2d 335, 337 (E.D.N.Y.2003); *Posner v. Minnesota Mining & Mfg. Co.*, 713 F.Supp. 562, 563 (E.D.N.Y.1989).

■ Without looking into the merits of the case, the complaint alleges the essential elements of a claim for breach of contract. Engler alleges that he entered into an agreement with Cendant for him to accept employment with IBM and to sign the release in exchange for his years of service being included by IBM in calculating the benefits he would receive. It is further alleged that Cendant breached this agreement when IBM did not include Engler's years of service with Cendant in calculating his benefits. At this stage of the litigation the Court is limited to determining whether the allegations in the complaint spell out the essential elements of a cause of action for breach of a contract. It does. Therefore, the Court finds that the Plaintiff has stated a valid claim in the

complaint for 12(b)(6) purposes. Accordingly, the motion by defendant Cendant to dismiss the breach of contract claim is denied.

### III. CONCLUSION

Based on all the foregoing, it is hereby

**ORDERED**, that IBM's motion to dismiss the complaint is DENIED; and it is further

**ORDERED**, that Cendant's motion to dismiss the ERISA claim is GRANTED; and it is further

**ORDERED**, that Cendant's motion to dismiss the state law causes of action is DENIED; and it is further

**ORDERED**, that the parties are directed to report forthwith to United States Magistrate Judge Michael L. Orenstein to set a schedule for the completion of discovery.

**SO ORDERED.**